IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LORI CHAVEZ-DEREMER, *In her capacity as Secretary of Labor for The United States Department of Labor*, <br><br> *Plaintiff*, <br><br> v. <br><br> SPRING OF LIFE HEALTHCARE, LLC, and JUSTINE NJAFUH, <br><br> *Defendants*. | Case No. 1:25-cv-00925-AJT-LRV |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Default Judgment, (Dkt. No. 12) (the "Motion"), requesting an entry of default judgment against Defendants Spring of Life Healthcare, LLC and Justine Njafuh. The Court held a hearing on the Motion on September 12, 2025. (*See* Dkt. No. 18.) Counsel for Plaintiff appeared at the hearing; no one appeared on behalf of Defendants. (*Id.*) At the conclusion of the hearing, the undersigned took the Motion under advisement. (*Id.*) For the reasons that follow, the undersigned recommends that Plaintiff's Motion be **GRANTED**. The undersigned files this Report and Recommendation under 28 U.S.C. § 636(b)(1)(C). A copy of the Report and Recommendation will be provided to all interested parties.

### I.  Factual Background

The following facts are established in the Complaint,[1] (Dkt. No. 1), and the declaration submitted by Mallory Cooper-Kreidler, the Acting District Director of the Wilkes-Barre District

---

[1] *See GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim." (citing *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 187 F.3d 628 (4th Cir. 1999) (unpublished table decision)).

1

Office of the Wage and Hour Division (WHD"),[2] (Dkt. No. 14) (the "Declaration"). The WHD is a sub-agency within the United States Department of Labor. (Dkt. No. 14 at ¶ 1.)

On May 30, 2025, Plaintiff Lori Chavez-DeRemer, the Secretary of Labor of the United States Department of Labor, filed this action pursuant to her statutory authority "to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees" under the FLSA. (29 U.S.C. § 216(c).) Plaintiff brought two causes of action against Defendants for failure to pay certain employees "for hours worked over forty (40) in a workweek at rates not less than one and one-half times their regular rates," in violation of Sections 7 and 15(a)(2) of the FLSA; and for failure "to make, keep, and preserve adequate and accurate records of wages, hours, and other conditions of employment that they maintained," in violation of Sections 11(c), and 15(a)(5) of the FLSA. (Dkt. No. 1 ¶¶ 7, 8.)

Defendant Spring of Life Healthcare, LLC ("Spring of Life") is a Virginia company that operates assisted living facilities for "the sick, the aged, or the mentally ill or defective." (Dkt. No. 1 ¶¶ 2–5) (internal citations omitted.)) Defendant Justine Njafuh is the owner and Chief Executive Officer of Spring of Life and, in that capacity, Defendant Njafuh oversees the daily operation of the business, with the ability to hire, fire, and set pay rates. (Dkt. No. 1 ¶ 3.) From September 2021 to October 2024, Defendants employed several employees "in various roles, including supervisors, administrative staff, program directors, nurses, direct support professionals, and additional caregivers / personal aides," including the fifty-three (53) employees identified in

---

[2] Pursuant to Rule 55(b)(2)(c) of the Federal Rules of Civil Procedure, the Court relies on the Declaration as evidence to establish the truth of the allegations in the Complaint. *See Barbeau v. Siege Techs., LLC*, No. 1:24-cv-682-CMH-WEF, 2025 WL 1905584, at *7 (E.D. Va. July 1, 2025) (discussing a court's authority to go beyond the four corners of the complaint when assessing liability under Rule 55), *report and recommendation adopted*, No. 1:24-cv-682, 2025 WL 2155793 (E.D. Va. July 29, 2025).

Schedule A to the Complaint (the "Schedule A Employees").³ (*Id.* ¶ 6.) Defendants paid these 53 employees on an hourly basis and issued paychecks "on a biweekly basis." (Dkt. No. 14 ¶ 14.) To record hours worked, employees "track[ed] their work time electronically or through a paper time sheet." (*Id.*) When employees "exceed[ed] 40 hours of work time in a workweek," Defendants' policies stated employees would be paid "time and a half"." (*Id.* ¶¶ 15, 16.) However, between September 2021 and October 2024, Defendants failed to "compensate[] [the Schedule A] employees for hours worked over forty (40) in a workweek at rates not less than one and one-half times their regular rates." (*Id.* ¶ 7.) Additionally, "Defendants failed to keep and preserve payroll records for employees, including accurate records of employees' total weekly overtime premium pay." (*Id.* ¶ 8(a).)

These violations were uncovered when the WHD began investigating Defendants in September 2024. (Dkt. No. 14 ¶ 3, 4.) As part of the investigation, WHD had "multiple conversations" with Defendant Njafuh, "obtain[ed] and review[ed] time and pay records for employees, interview[ed] employees, and collect[ed] other employment records." (Dkt. No. 14 ¶ 5.) Upon review of Defendants' "time and pay records," and through "employee interviews that the WHD conducted," the WHD concluded that Defendants committed violations of the FLSA's overtime and recordkeeping provisions. (*Id.* ¶ 16); (*see also* (Dkt. No. 14-4 at 1)⁴ ("They do not

---

³ The fifty-three (53) employees listed in Schedule A are: (1) Olakunle Ajewole; (2) Chidozie Aniemena; (3) Serge A. Atangageh; (4) Jensen Atte; (5) Elijah Azundah; (6) Nuboke P. Bakon; (7) Frankie Ball; (8) Alieu Bangura; (9) Ashia D. Craig; (10) Divine Dohmusi; (11) Justin Dohmusi; (12) Juvel A. Ebai; (13) Canstantino I. Ekongo; (14) Linda Fawaz; (15) Banyong Fonocho; (16) Shakeen Fonocho; (17) Ndango N. Gwapadinga; (18) Martin Gyabaah; (19) Ejong Ivo; (20) Adama Kamara; (21) Ahmed Kamara; (22) Mohamend Kamara; (23) Sabum T. Kaspa; (24) Lovert Kome; (25) Wilfred Kum; (26) Stanley K. Kumah; (27) Eugene U. Mbacham; (28) Sonia Membrano 29. Amissu N. Mohtindanke; (30) Godlove F. Ndansi; (31) Rashidou Ndezekasaah; (32) Isaac A. Ndi; (33) Theodore T. Ndibmun; (34) Celestine Nebanyamukong; (35) Divine Nguh; (36) Asima Njomo; (37) Jung D. Noh; (38) Ferdinand Nyuyse; (39) Cyril Okoro; (40) Olayiwola Oladapo; (41) Pamela Onwe; (42) Amadi Russell; (43) Luis Santamaria; (44) Alpha Sellu; (45) Mohaned Sesay; (46) Kingsley Taboh; (47) Didacus Tabrazeng; (48) Sidonie E. Teuma; (49) Daina Titamongu; (50) Marie Helene H. Tonkam;(51) Nicole Yeluma; (52) Augustine Y. Yufenyuy; and (53) Tata Yuven.
⁴ Plaintiff redacted the names and Personally Identifiable Information of the employees interviewed and do not rely on that redacted information for purposes of establishing liability or damages. *See U.S. v. Hemphill*, 369 F.2d 539,

pay time and a half when you work over 40 hours in a week, just your regular rate. . . . No one got paid overtime . . . ."); (*Id.* at 3) ("They never paid me time and a half when I worked over 40 hours in a week."); (*Id.* at 5) ("I did not get paid overtime when I worked over 40 hours in a week"); (*Id.* at 8) ("She did not pay overtime just straight time.")).

## II. Proposed Findings and Recommendations

### A. Jurisdiction and Venue

Before the court can render a default judgment, it must determine that there is subject matter jurisdiction over the claims, personal jurisdiction over the defaulting parties, and that it is the proper venue. First, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1345 because the United States is the plaintiff initiating this civil suit. Alternatively, the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337 and 29 U.S.C. § 217, the latter of which provides that United States district courts "shall have jurisdiction, for cause shown, to restrain violations of section 215 of [the FLSA], including . . . the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter."

Second, the Court has personal jurisdiction over Defendants. Defendant Spring of Life is a Virginia limited liability company with its principal place of business in Fairfax, Virginia, which is located within this District. (Dkt. No. 1 ¶ 2.) Defendant Justine Njafuh is "the sole owner and CEO of the [Spring of Life]," and "actively involved in the day-to-day operations, including directing the Company's employment practices, hiring and firing employees, and setting employees' conditions of employment, including rates and methods of compensation." Therefore, Defendants maintain sufficient contacts for personal jurisdiction in Virginia courts, and the Court

---

542 (4th Cir. 1966) ("The qualified privilege of withholding the names and statements of informants has been repeatedly and consistently upheld by the Courts.").

has personal jurisdiction over Defendant Spring of Life under the general jurisdiction inquiry. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.").

Third, Plaintiff filed this lawsuit in the proper venue. Under 28 U.S.C. § 1391(b), venue is proper in a judicial district "in which any defendant resides, if all defendants are residents of the State in which the district is located," or "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1)–(2). Since Spring of Life resides here and a substantial part of the events giving rise to the claims in this case occurred at two of Defendants' facilities in this District—specifically, the facilities at 8441 Amanda Place, Vienna, VA 22180 and 9710 Five Oaks Road, Fairfax, VA 22031—this is a proper venue. (Dkt. No. 1 ¶¶ 2, 3, 5.); *see also* (Dkt. No. 14 ¶ 9.)

### B. Service of Process

Next, the Court must be satisfied that all defaulting parties have been properly served. On June 26, 2025, Plaintiff filed waivers of service executed by Justine Njafuh on behalf of herself and Spring of Life.[5] (Dkt. Nos. 6, 7.) The executed waivers comply with Federal Rule of Civil Procedure 4(d) and Rule 12(a)(1)(A)(ii). The waivers further confirm that Defendants received a copy of the Complaint and that Defendants understood their responsive pleading was due within sixty (60) days, by July 29, 2025. (*Id.*) Based on the foregoing, the undersigned finds that service of process has been accomplished in this action.

---

[5] The Court takes judicial notice of the fact that the Virginia State Corporation Commission's Clerk's Information System identifies Defendant Njafuh as the registered agent for Spring of Life, and she is therefore qualified to accept or waive service on its behalf.

## C. Grounds for Default Judgment

Default judgment may be entered when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Here, Defendants failed to file a responsive pleading by the July 29, 2025 deadline set forth in the waivers of service. (*See* (Dkt. Nos. 6, 7).) Accordingly, on July 30, 2025, Plaintiff filed a Request for Entry of Default against Defendants pursuant to Federal Rule of Civil Procedure 55(a). (Dkt. No. 8.) The Clerk of Court entered an Order of Default against Defendants on July 31, 2025. (Dkt. No. 10.) The undersigned finds that default was properly entered.

On August 27, 2025, Plaintiff filed the pending Motion for Default Judgment. (Dkt. No. 12.) The Motion asks the Court to order statutory damages, liquidated damages, and injunctive relief to compensate certain employees who are owed back wages for overtime. (Dkt. No. 13 at 1–2.) On August 27, 2025, Plaintiff certified that the Motion was served on Defendants via email and USPS First Class Mail using the same addresses Defendant Njafuh provided in her signature block for the executed waivers of service. (*See* Dkt. Nos. 6, 7, 12.) Based on this record, the Court is satisfied that Plaintiff provided notice of the Motion and related hearing to Defendants. The Court now considers the arguments put forth in the Motion regarding liability and damages.

## D. Liability

Although a defaulting defendant is deemed to have admitted the well-pleaded allegations of fact set forth in the complaint, *see* Fed. R. Civ. P. 8(b)(6), conclusions of law or "allegations regarding liability that are not 'well-pleaded'" are not deemed admitted. *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. Feb. 2, 2011) (quoting *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)); *see also JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014). Before entering default judgment, therefore, this Court must evaluate

Plaintiff's Complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the Complaint states a claim upon which relief can be granted. *JTH Tax, Inc.*, 8 F. Supp. 3d at 736. To meet this standard, the Complaint must set forth "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the Court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

As a threshold matter, Plaintiff has established that Defendants and the Schedule A Employees are covered by the FLSA. To establish FLSA coverage:

> (i) each defendant must be an "employer" that "employed" individuals as defined by 29 U.S.C. §§ 203(d), 203(g),
>
> (ii) the fifty-three individuals in Schedule A must be "employees" as defined by 29 U.S.C. § 203(e);
>
> (iii) those employees must be engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1)(A); and
>
> (iv) Defendants must have an "annual gross volume of sales made or business done [in an amount] not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(1)(A).

Beyond the definitions provided in the FLSA, Courts determine whether the employer-employee relationship exists by applying the "economic reality" test, which assesses whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *See Kerr v. Marshall University Board of Governors*, 824 F.3d 62, 83 (4th Cir. 2016). If separate persons or entities "share control over an individual worker," both "may be deemed joint employers under the FLSA." *Schultz v. Capital Intern. Sec., Inc.*, 466 F.3d 298, 305 (4th Cir. 2006) (citing 29 C.F.R. § 791.2(a)).

7

Here, Plaintiff has set forth that: Defendants hired, fired, supervised, determined the rate of payment of, and maintained employment records for the Schedule A Employees,[6] *see* (Dkt. No. 1 ¶¶ 3–4); those employees engaged in commerce by "purchasing medications from Maryland and using them to complete business activities in Virginia," (*id.* ¶ 5); and Defendants surpassed the $500,000 statutory bar in gross sales volume, (*id.*) Given that Plaintiff brought this action against Defendant Njafuh, individually and as owner of Spring of Health, it bears emphasizing that Defendant Njafuh is "the sole owner and CEO of the [Spring of Life]," and "actively involved in the day-to-day operations, including directing the Company's employment practices, hiring and firing employees, and setting employees' conditions of employment, including rates and methods of compensation." (Dkt. No. 1 ¶ 3); (*see also* Dkt. No. 14 ¶ 13.) The employee interview statements further establish that Defendant Njafuh "handled issues regarding missing hours and pay" and "determined [the] way I would get paid." (*See* Dkt. No. 14-4 at 6–7.) Therefore, Defendant Njafuh is an "employer" under § 203(d), who is jointly and severally liable for the FLSA violations and resulting damages of the company, Spring of Life. *See* 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.").

Given that the Schedule A Employees are entitled to FLSA protections and Defendants are bound by the FLSA's obligations, Plaintiff brings claims for: (1) failure to pay those employees "for hours worked over forty (40) in a workweek at rates not less than one and one-half times their

---

[6] The Court is not aware of any evidence establishing that the exceptions listed in 29 U.S.C. § 213 apply to these employees (*e.g.*, seaman on a vessel other than an American vessel). *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 337 (4th Cir. 2008) ("An employer bears the burden of proving that a particular employee's job falls within such an exception.").

8

regular rates," in violation of Sections 7 and 15(a)(2) of the FLSA; and (2) failure "to make, keep, and preserve adequate and accurate records of wages, hours, and other conditions of employment that they maintained," in violation of Sections 11(c), and 15(a)(5) of the FLSA. The undersigned addresses each claim in turn.

### 1. *Defendants failed to pay proper overtime wages (Count I)*

Plaintiff alleges that Defendants "fail[ed] to pay [its] employees time and one-half their regular rate for their hours worked over forty (40) in a workweek," in contravention of the FLSA. (Dkt. No. 1 ¶ 7(a).) Section 7 of the FLSA provides "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. §207. As discussed herein, Defendants were joint employers of the Schedule A Employees, so Plaintiff must establish that these employees worked more than forty (40) hours some weeks and were not paid the premium overtime rate.

The Complaint plausibly alleges that, between September 2021 and October 2024, the Schedule A Employees "worked approximately 40.5 to over 100 cumulative hours each during the workweek," but were not paid time and a half for the hours in excess of forty (40) hours in a workweek. (Dkt. No. 1 ¶ 7.) Further, Plaintiff has submitted the sworn declaration of Ms. Cooper-Kreidler, which describes the overtime pay violations that are apparent from Defendants' time sheets and payroll records, and were corroborated in employee interviews. (Dkt. No. 14 ¶ 16.) For each of the 53 Schedule A Employees, Plaintiff provides a spreadsheet that reflects their regular pay rate, weekly hours, and total pay for hours worked between September 2021 and October 2024, including several weeks where they were not paid at the overtime rate for overtime

hours. (Dkt. No. 14-4.) In sum, the record reflects that during the relevant period, Defendants failed to pay the Schedule A Employees the required premium overtime rate, paid them straight time for hours worked, and that such conduct constitutes a violation of Section 7 of the FLSA.

### 2. *Defendants failed to maintain the requisite pay and employment records*

Plaintiff alleges that "Defendants violated the provisions of Sections 11(c) and 15(a)(5) of the Act by failing to make, keep, and preserve adequate and accurate records of wages, hours, and other conditions of employment that they maintained as prescribed by the regulations issued and found at 29 C.F.R. Part 516." (Dkt. No. 1 ¶ 8.) To establish a violation of the FLSA for failure to make, keep, and preserve records under 29 U.S.C. § 211(c), the plaintiff must show that: (1) defendant was an "employer" under the FLSA; (2) the employees were "employed" by defendant; and (3) defendant failed to preserve records of their employees regarding "wages, hours, and other conditions and practices of employment." *See* 29 U.S.C. § 211(c). Since Plaintiff has established that Defendants were the "employers" of the Schedule A "employees," the remaining issue is with respect to recordkeeping. In that respect, Plaintiff has established that Defendants failed to accurately record "employees' total weekly overtime premium pay," (Dkt. No. 1 ¶ 8.) and only "produced partial time records," (Dkt. No. 14 ¶ 18). Defendants therefore violated Section 11(c) of the FLSA. *See Walsh v. Kynd Hearts Home Healthcare, LLC*, 644 F. Supp. 3d 180, 186 (E.D. Va. 2022) ("By keeping records that did not accurately reflect the overtime due to employees, the Defendants also violated Section 11(c) . . . .")

### E.    Requested Relief

Plaintiff requests $243,459.94 in back wages to the fifty-three Schedule A Employees, an additional $243,459.94 in liquidated damages (*i.e.*, total of $486,919.88), and injunctive relief. (Dkt. No. 13 at 16–17.) If liquidated damages are not awarded, Plaintiff requests "an Order

awarding prejudgment interest computed at the underpayment rate established by the Secretary of the Treasury pursuant to 26 U.S.C. § 6621." (Dkt. No. 1 at 5.)

### 1. Back Wages

Plaintiff argues that Defendants must pay back wages in the amount of $243,459.94 with respect to the fifty-three Schedule A Employees for the period from September 2021 to October 2024. (Dkt. No. 13 at 14–15.) Unlike liability, allegations concerning damages are not admitted upon default. *See* Fed. R. Civ. P. 8(b)(6). Instead, the Court "must make an independent determination regarding damages." *Wilcox v. Transmodal Solutions, LLC*, 473 F. Supp. 3d 574, 584 (E.D. Va. 2020) (citation and quotation marks omitted).

At the outset of the damages analysis, a court must determine whether the defendant willfully violated the FLSA to apply either the two-year or three-year lookback period. 29 U.S.C. § 255 Under 29 U.S.C. § 255, "a cause of action arising out of a *willful* violation may be commenced within three years after the cause of action accrued." (*Id.*) (emphasis added). An employer acted willfully if she "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 130 (4th Cir. 2015) (citing *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 357 (4th Cir.2011)). "The word 'willful' is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677, 1681, 100 L. Ed. 2d 115 (1988). Plaintiff bears the burden of establishing, as a matter of that, that the employer's conduct was willful. (*Id.*)

To that end, Plaintiff notes that Defendants' own policies acknowledged that their employees were entitled to premium overtime pay, which indicates Defendants knew they were

11

obligated to provide such pay under the FLSA and nevertheless failed to do so. (*See* Dkt. No. 14 ¶ 15 (citing Dkt. No. 14-4 at 1–2).) Defendants' "Time & Attendance Policy & Agreement" also: (1) differentiates between straight time and overtime; (2) requires advance supervisory approval for overtime hours; (3) discusses overtime as a "condition of employment," and; (4) threatens disciplinary action, including termination, for violation of Defendants' overtime policies. (*See* Dkt. No. 14-4 at 1–2.) Taken together, this evidence is sufficient to determine that Defendants either knew or showed reckless disregard for their obligations under the FLSA, such that, a three-year statute of limitations is applicable under 29 U.S.C. § 255.

Plaintiff requests back wages for the three-year period from September 2021 to October 2024. For that period, Plaintiff calculated how many overtime hours the fifty-three (53) Schedule A Employees worked and were not compensated for at the premium overtime rate. As set forth in the sworn Cooper-Kreidler Declaration, Plaintiffs employed two different methods to calculate damages, depending on whether there were complete time and payroll records for the employee. (Dkt. No. 14 ¶ 18.) Where complete time records were available, Plaintiff adopted the pay rate and overtime hours from Defendants' records, then calculated back wages. (*Id.*) For instance, if an employee's regular rate is $19, the employee worked 16.5 overtime hours, and the employee was paid straight time for those hours, then the employee earned $313.50 (*i.e.*, $19 x 16.5), however, the employee should have earned $470.25, which consists of her regular rate multiplied by 1.5 multiplied by overtime hours (*i.e.*, $28.5 x 16.5). (*Id.*) To determine the back wages owed, Plaintiff multiplied the employee's regular rate by .5 (*i.e.*, $19 x .5 =$9.50) and multiplied by overtime hours (*i.e.*, $9.5 x 16.5 = $156.75). That calculation was done for the 18 employees who Plaintiff had complete records for.

As for the remaining 35 employees for whom Plaintiff had incomplete records, Plaintiff worked backwards, beginning with the total amount that each employee was paid in a two-week period divided by their hourly pay rate, to determine how many hours the employee worked in that two-week period (*e.g.*, $1,584 / $18 = 88 hours), then subtracted 80 hours to see whether there were any overtime hours. (Dkt. No. 14 ¶ 18.) For any overtime hours, Plaintiff multiplied the employee's regular rate by .5 and multiplied that pay rate by their overtime hours (*e.g.*, $9 x 8 hours = $72), to determine the back wages due to that employee. (Dkt. No. 14 ¶ 18.)

Using these methods, Plaintiff prepared a detailed spreadsheet that provides the following information for each of the fifty-three Schedule A Employees: (i) name; (ii) work week; (iii) hours worked for that work week; (iv) overtime hours that workweek; (v) regular pay rate; (vi) overtime premium pay rate; (vi) half of pay rate (*i.e.*, .5 multiplied by pay rate); (vii) gross pay from payroll; (viii) hours over 80 hours for payroll period; and (ix) back wages due. (*See* Dkt. No. 14-4.) Upon review, that spreadsheet demonstrates that the pay rate for the Schedule A Employees ranged from $15.23 to $32 per hour and some worked upwards of 100 hours in a workweek without receiving overtime pay for the hours in excess of forty (40) hours. (*Id.*) Upon review of the detailed calculations and the sworn declaration in support thereof, the undersigned will recommend that a judgment be entered for back wages in the amount of $243,459.94, to be distributed to the Schedule A Employees as set forth in the spreadsheet and summarized in Exhibit C to the Cooper-Kreidler Declaration. (Dkt. No. 14-3.)

### 2. *Liquidated Damages*

In addition to the unpaid overtime compensation, Plaintiff requests an equal amount of liquidated damages under Section 16(c) of the FLSA. *See* 29 U.S.C. § 216(c) ("The Secretary may bring an action in any court of competent jurisdiction to recover the amount of unpaid minimum

wages or overtime compensation and an equal amount as liquidated damages."). Only where "the employer shows to the satisfaction of the court that the act or omission giving rise to [the] action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA may the court exercise its discretion to deny liquidated damages. *See* 29 U.S.C. §260; *see also Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 375 (4th Cir. 2011).

Here, there is no evidence that Defendants acted in good faith, exercised reasonable diligence, or otherwise coordinated with the United States Department of Labor to avoid future violations upon engaging with the WHD investigators. To the contrary, the Cooper-Kreidler Declaration states that Defendants "did not provide proof of compliance with the FLSA" for the relevant period or the for the period thereafter. (Dkt. No. 14 ¶¶ 21–22.) And even though Defendants apparently claimed that they did not pay proper overtime rates because "they were not always convinced that employees were working for the entire time they were punched in," Defendants "did not provide any evidence to substantiate the assertion that the time records were inaccurate." (*Id.* ¶ 21.) Accordingly, the undersigned recommends an award of liquidated damages in the total amount of $243,459.94.

### 3. *Injunctive Relief*

Plaintiff also requests that Defendants, their agents, servants, employees, and all persons acting or claiming to act on their behalf and interest be permanently enjoined from violating the provisions of Sections 7, 11(c), 15(a)(2), and 15(a)(5), of the FLSA. Further, Plaintiff asks that these same parties be enjoined from directly or indirectly soliciting or accepting the return or refusal of any sums under this Judgment. Third, Plaintiff requests that Defendants and their agents be enjoined "from directly or indirectly soliciting or accepting the return or refusal of any sums under this Judgment."

14

District courts may issue injunctive relief "for cause shown ... [from] any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter." 29 U.S.C. § 217. All orders granting an injunction must further comply with Federal Rule of Civil Procedure 65(d) by stating the reason why the injunction was issued; stating its terms specifically; and describing "in reasonable detail ... the act ... required" without referring to any "other document." *Su v. Med. Staffing of Am., LLC*, No. 22-cv-1290, 2023 WL 3735221, at *6 (4th Cir. May 31, 2023) (J. Richardson dissenting from the dissolution of an injunction). The Fourth Circuit has held that it is insufficient under Rule 65(d) to find that an employer has failed to comply with the FLSA, will continue to violate the FLSA, and must be enjoined "from committing further violations of the FLSA." (*Id.*)

Here, Plaintiff's requested injunctive relief is too vague, merely requires compliance with existing law, or is otherwise duplicative of other relief that the undersigned proposes granting. First, like in *Su v. Med. Staffing of Am., LLC*, Plaintiff requests that the Court prospectively enjoin Defendants from violating certain provisions of the FLSA, specifically, 29 U.S.C. §§ 207, 211(c), 215(a)(2), and 215(a)(5). Even though Plaintiff's proposed order contains two related paragraphs that purport to describe "in reasonable detail ... the act ... required," FED. R. CIV. P. 65(d), those paragraphs do no more than regurgitate Defendants' existing obligation to provide overtime pay to eligible employees and maintain adequate records, thereby falling short of the specificity required under Rule 65(d). Next, Plaintiff requests that Defendants and their agents be "permanently enjoined and restrained from withholding the payment of back wages to the individuals listed in Schedule A." (Dkt. No. 12-1 at 3.) However, requiring such conduct is incidental to any judgement against Defendants for back wages and therefore duplicative of the damages award contemplated herein.

15

Finally, Plaintiff requests that Defendants and their agents be enjoined "from directly or indirectly soliciting or accepting the return or refusal of any sums under this Judgment." (*Id.*) Presumptively, such an injunction would apply where a Schedule A Employee receives a distribution from the United States Department of Labor in connection with this matter and that employee is then solicited to return some portion of that distribution to Defendants. This Court has previously granted such relief and finds there is good cause to do so here, to safeguard the employees who will benefit from any damages awarded in this action. *See Acosta v. Rubins Co. MJ, Inc.*, No. 1:17-cv-0032 (LO/JFA), 2018 WL 3232823, at *6 (E.D. Va. Mar. 12, 2018), *report and recommendation adopted*, No. 1:17-cv-00032-LO-JFA, 2018 WL 1626032 (E.D. Va. Apr. 3, 2018).

### III. Recommendations

For the reasons stated above, the undersigned makes the following recommendations:

1. Grant Plaintiff's Motion for Default Judgment (Dkt. No. 13).

2. Enter judgment in favor of Plaintiff and against Defendants, jointly and severally, in the amount of $486,919.88, comprising $243,459.94 in back wages and $243,459.94 in liquidated damages. For payments related to the back wages and liquidated damages, Defendants shall pay online by ACH transfer, credit card, or debit card by going to https://www.pay.gov/public/form/start/77689032 or www.pay.gov. Alternatively, Defendants may provide a certified check, bank check, or money order made payable to "Wage and Hour Division-Labor," bearing "Case ID# 1997009," and mailed to: U.S. Department of Labor, Northeast Regional Office, Wage and Hour Division 1835 Market Street, 19th Floor, Mailstop WHD/19 Philadelphia, PA 19103-2968.

3. Order that the Secretary, through the Wage and Hour Division, distribute any damages to the employees listed in Schedule A, or to their estates, if necessary. Any sums not distributed to the employees on Schedule A, or to their estates, because of inability to locate the proper persons or because of such persons' refusal to accept such sums, shall be deposited with the Treasurer of the United States under 29 U.S.C. § 216(c). Defendants shall remain responsible for all tax payments considered to be the "employer's share," including, but not limited to, Federal Insurance Contribution Act ("FICA") taxes.

4. Enjoin Defendants and anyone acting on their behalf or within their control from directly or indirectly soliciting or accepting the return or refusal of any sums under this Judgment. Any such amount shall be immediately paid to the Secretary for deposit as above, and Defendants shall have no further obligations with respect to such returned monies.

## IV. Notice

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

Plaintiff is directed to serve Defendants with a copy of this Report and Recommendation consistent with service of all other filings in this matter.

**ENTERED** this 23rd day of December, 2025.

Alexandria, Virginia

/s/ *LRV*
Lindsey Robinson Vaala
United States Magistrate Judge